The Chancellor.
On the 21st of August, 1835, Hiram Gilbert and Gyrus S. Browning purchased of John M. New-kirk a tract of land containing sixteen acres, then in Bergen county, now in the county of Hudson, and mortgaged the same to John M. Newkirk, to secure the payment of $3250, part of the purchase money thereof.
On the 19th of October, 1835, Hiram Gilbert and wife conveyed his undivided half in said premises to the said Cyrus S. Browning.
On the 20th of July, 1837, Browning purchased, of John B. Coles and others, a tract of land, adjoining the said sixteen acre tract, containing five and a half acres. To secure the purchase money, he mortgaged the same to his grantors, John B. Coles and others, for $8355, including in the said mortgage the sixteen acre tract purchased of Newkirk, excepting thereout a strip of one acre, on the easterly side of the sixteen acre tract.
On the 5th of April, 1838, Browning conveyed one equal undivided half of all the above premises (the sixteen and five and a half acres) to Alexander Botts, subject to the above mortgages to Newkirk and Coles.
On the 28th November, 1838, Botts conveyed the one half of his interest in the premises so conveyed to him by Browning, being one undivided fourth part of the sixteen and and five and a half acre tracts, to Ebenezer Montague; and on the 9th of December, 1838, Browning, by another deed, conveyed to Montague the remaining fourth of the premises, by which said several conveyances, Montague became seized of the one equal undivided half of the two tracts, subject to the Newkirk and Coles mortgages.
On the 5th of September, 1838, Browning conveyed to John Tonnelle, jun., the one undivided fourth part of the sixteen and five and a half acre tracts, and on the 7th of *447 September, 1838, Browning conveyed the remaining fourth part to said Tonnelle, so that Tonnelle and Montague thus became entitled, each, to the one equal undivided half of the sixteen and five and a half acre tracts, subject to the Newkirk and Coles mortgages.
On the 30th of June, 1840, Tonnelle and Montague were entitled to the equity of redemption in the whole premises. On that day, Coles, under a decree of this court for the satisfaction of his mortgage, sold the equity of redemption of Tonnelle and Montague in all the premises, except the strip of one acre on the easterly side of the sixteen acre tract, that not being covered by the Coles mortgage, and Hiram Gilbert became the purchaser, and received a deed from the sheriff for the same.
The title to the premises then stood thus: the Newkirk mortgage covered the whole. Tonnelle and Montague were the owners, as tenants in common, of the equity of redemption in the one acre strip, and Hiram Gilbert was the owner of the equity of redemption in the residue of the premises.
What, then, were the equities of the respective parties —of Tonnelle and Montague — as the owners of the equity of redemption in the strip of one acre, and of Gilbert, as the owner of the equity of redemption in the residue of the premises, as to the satisfaction of the Newkirk mortgage out of their respective interests in the land. This point once settled, there can be no difficulty in ascertaining the equities of subsequent purchasers under them. The equities attached will follow the land, and will govern the rights of all persons claiming under these respective titles.
Adolphus S. Gilbert, by virtue of several mesne conveyances from Hiram Gilbert, claims title to the equity of redemption in all the premises, except the one acre strip. Horace Galpin claims title, under Tonnelle and Montague, to the equity of redemption in an equal undivided half of the one acre strip, and a prior lien, by virtue of a *448 judgment which he holds upon the other half of the strip. The Newkirk mortgage is now to be satisfied, and it becomes a matter of importance, not to the holders of the hewkirk and Coles mortgages, for the property will satisfy them, no matter in what parcels or in what order it may be sold, but to Gilbert and Galpin, how the respective interest which they claim in the premises should contribute to satisfy the mortgage. Gilbert iusists that the strip is 'first liable, while Galpin contends that the residue of the premises must be first sold, and the proceeds appropriated to liquidate the mortgage. As I before stated, we must go back and ascertain the respective equities of Tonnelle and Montague on the one side, and of Hiram, Gilbert on the other, at the time the latter became entitled to the equity of redemption of the portion of the premises conveyed to him by the sheriff; for the contesting parties hold under them, and are entitled to their equities, and •no more.
As to how these equities should be adjusted, I have no doubt. The facts upon which they respectively arise make them so manifest, as to render any reasoning or illustration of their propriety quite superfluous.
The sheriff's deed conveyed to Hiram Gilbert the tille of Tonnelle and Montague in all the premises, except the one acre strip. By that deed, Hiram Gilbert occupied the same position in relation to Tonnelle and Montague as if they themselves had made and executed the deed. The sheriff" acted as their agent by appointment of law, by whom their title was transmitted to Hiram Gilbert. Now can there be a doubt, if Tonnelle and Montague had made the conveyance to Hiram, Gilbert, that the strip of land, the title to which remained in them, would have been first liable to contribute to the payment of the Newkirk mortgage ? The case is nothing more than the familiar one of A’s owning a tract of two acres oovered by a mortgage. 'A. sells one acre to B. The acre, the title to which remains in A., is first liable to pay the mortgage.
*449 I have said nothing as to the mortgage which Hiram Gilbert made to the Coles after he acquired title from the sheriff. The equities, existing between the holders of that mortgage and the holders of the Newkirk mortgage, do not necessarily control the equities of the contending parties in this suit. If it is necessary, in order to secure the payment of the Coles mortgage, that the strip should be so sold — or in other words, if the property covered in common by the two mortgages will not pay both — then the holder of the Coles mortgage has a right to insist that the Newkirk mortgage shall resort to the strip before coming upon the common fund; but if the common fund is sufficient to pay both mortgages, then, as between the two mortgages, the holder of the Coles mortgage cannot insist upon the strip’s being first sold. There is no contest in this suit between the two mortgages. The holder of the Coles mortgage has not asked any interference of the court for its protection. The reason is, as I have stated, because no protection is necessary. The common fund is amply sufficient to pay the mortgages.
The equities of the contending parties in this suit are wffiolly independent of the equities between the Newkirk and Coles mortgages. The existence of the latter mortgage has no bearing whatever upon the equities in controversy. They are not in any manner varied by it. They are precisely the same as if the Coles mortgage had never existed.
As between Adolphus S. Gilbert and Horace Galpin, the former has a right to a decree of the court that the one acre strip shall be first sold and applied to the payment of the Newkirk mortgage. The question has been rendered a perplexing one, in consequence of the numerous conveyances and reconveyances which have been made. I have not been deterred, by the very great length of the written briefs of counsel which have been submitted to me, from examining all the aspects of the case, which have been most ably and industriously presented. *450 But I do not think there is any difficulty in determining how the equities are to he adjusted when the ease is once divested of its intricacies, occasioned by the fact to which I have referred.
There is one other question, only, of any importance, and that is in relation to the Botts mortgage.
On the 5th of April, 1838, Oyrus S. Browning, hy deed, conveyed to Alexander L. Botts “ all his one half interest, or undivided moiety,” in the Beacon racecourse, consisting of several tracts of land in the deed particularly described, which several tracts include all the land covered hy the mortgages and other conveyances embraced in this controversy. On the 4th of September, 1838, Browning executed a mortgage to Botts covering the whole Beacon racecourse. This was not a money mortgage, but a mortgage executed to protect Browning’s title, before conveyed hy Browning, and generally to.indemnify his title against encumbrances. On the 28th of November, 1838, Botts conveyed to Bbenezer Montague one-fourth of the Beacon racecourse, with a covenant for quiet enjoyment against grantor, and all claiming under him. On the 9th of December, 1839, Botts conveyed to Montague all his “ right, title, and interest to all property in New Jersey derived from Gyrus S. Browning, except a lease to H. 11. Watson for six years, from April 13th, 1838, and one to D. H. Branch, for same period.” On the 6th of January, 1840, Botts made the following endorsement on the mortgage given to him by Browning: “ for the full protection of any title conveyed by me to IS. Montague, I hereby assign to him all benefit resulting from the written agreement of Gyrus S. Browning, as witness my hand and seal this 6th day of January, 1840; which was witnessed by G. S. Browning, and the deed and endorsement then delivered to Montague, Montague, by this endorsement and delivery to him of the mortgage, and by Botts’ conveyance of December 9th, 1839, became entitled to all Botts’ interest in the mortgage. On the 30th of June, 1840, while Mon *451 iague held the title to the racecourse which Botts had conveyed to him, and also this mortgage, all Montague’s right in the racecourse, except the “strip” which has been mentioned in the former part of this opinion, was sold, under a decree of this court, on a mortgage, subject to which both Botts and Montague had purchased. The complainant, who holds his mortgage from the purchaser under the decree, now produces this mortgage. Botts, in his answer, makes no mention of the assignment. He comes before the court by his answer, claiming to be the holder of the mortgage, and alleges that, in consequence of a defect in the title conveyed to him by Browning, he was obliged to pay off encumbrances to a large amount, and insists, for such amount, he is entitled to have a decree in his favor upon the mortgage. I cannot see how, in the face of his conveyances to Montague of all his interest iu the land, and of Ins transfer to Montague of this mortgage of all benefit resulting from the mortgage, and with the mortgage out of his possession, he can claim a decree upon it. His counsel insists that he has an equitable interest in the mortgage for his protection, notwithstanding the assignment of it to Montague. But he reserved no such interest in the transfer, and if any exists — notwithstanding the transfer, he should have set it out in his pleadings. He cannot come into court claiming to be the absolute owner of a mortgage, and then, when the mortgage is shown to be in the hands of some one else by his assignment, set up an equitable interest in himself contrary to the terms of that assignment. His claim is not consistent with the pleadings.
A decree must be entered in conformity to these views.